# UNITED STATES DISTRICT COURT

District of New Jersey

Chambers of
**William H. Walls**
District Judge

(973) 645-2564
(973) 645-3436 Fax

Martin Luther King Jr.
Federal Courthouse
50 Walnut Street
Newark, New Jersey 07102

NOT FOR PUBLICATION

LETTER ORDER

ORIGINAL ON FILE WITH CLERK OF COURT

January 12, 2006

**Appearances:**

Sherilyn Pastor, Esq.
Sean P. Campbell, Esq.
Richard Valladres, Esq.
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102-4056
    Attorneys for Third-Party Plaintiff First Occupational Center of New Jersey

Lori A. Patrick, Esq.
Kevin E. Wolff, Esq.
Ivan V. Miletic, Esq
Coughlin Duffy, LLP
350 Mount Kemble Avenue
P.O. Box 1917
Morristown, NJ 07962-1917
    Attorneys for Third-Party Defendant St. Paul Mercury Insurance Co.

Re:    <u>Hospitality Pac, Inc. v. First Occupational Center of New Jersey</u>; No. 04-4562 (WHW)
       Motions for Summary Judgment

Dear Litigants:

First Occupational Center of New Jersey ("FOCNJ" or "Third-Party Plaintiff") moves for partial summary judgment ordering St. Paul Mercury Insurance Company ("St. Paul" or "Third-Party Defendant") to defend it against the claims of Hospitality Pac, Inc. ("Hospitality" or

"Plaintiff"). St. Paul moves for summary judgment on the Third-Party Complaint. St. Paul's motion is granted. The motion of FOCNJ is denied.

## FACTS AND PROCEDURAL BACKGROUND

FOCNJ is a New Jersey not-for-profit corporation offering storage and other services. During 1999 and 2000, FOCNJ stored certain items belonging to Hospitality, a New York corporation engaged in the business of creating gift baskets. Sometime in the fall of 1999 or the winter of 2000, Hospitality informed FOCNJ that there were discrepancies relating to the inventory amounts of Hospitality's products at FOCNJ's facilities. Hospitality and FOCNJ ceased doing business in June, 2000 and Hospitality filed suit against FOCNJ on September 20, 2004 for negligence, breach of contract and breach of bailment. Damages are claimed in the amount of $82,200 and the matter is before the Court under the diversity jurisdiction of 28 U.S.C. § 1332.

FOCNJ filed a Third-Party Complaint against St. Paul, its Minnesota-based insurer, on January 18, 2005. FOCNJ seeks declaratory judgment requiring St. Paul to indemnify and defend it against Hospitality's claims.[1] FOCNJ additionally alleges breach of contract and breach of the duty of good faith by St. Paul. FOCNJ now moves for partial summary judgment on the portion of the declaratory judgment claim that would require St. Paul to defend the suit brought by Hospitality. St. Paul moves for summary judgment on the Third-Party Complaint.

## LEGAL STANDARD

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law."

---

[1] The insurance policy in issue in this case is composed of three policies: the General Liability Policy, the Umbrella Policy, and the Property Policy. When it affects the analysis, the Court will specify the individual portion of the overall policy.

Fed. R. Civ. P. 56(C). A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit. Id. at 248. The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. Celotex v. Catrett, 477 U.S. 317, 318 (1986).

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). To survive a motion for summary judgment, a non-movant must present more than a mere scintilla of evidence in his favor. Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005). The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001). At the summary judgment stage the Court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. In doing so, the Court must construe the facts and inferences in the light most favorable to the non-moving party. Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002).

**DISCUSSION**

**I. St. Paul's Duty to Indemnify**

St. Paul's principal claim is that the "Control of Property" exclusion in the General Liability Policy relieves it of any responsibility to indemnify FOCNJ. That provision states:

"Control of property: We won't cover property damage to the following property: . . . *Personal property* that is in the care, custody, or control of the protected person." (emphasis added).

FOCNJ's response to the invocation of the Control of Property exclusion is that the term "personal property" is not defined in the policy and is ambiguous. According to FOCNJ, "[a] reasonable insured would expect personal property to encompass items of personal use, but not items used in business. Thus, the palm pilot owned by one of FOCNJ's customers would fall within the exclusion for personal property. The truckload of palm pilots that FOCNJ's customer intended to sell would not." (FOCNJ's Opp'n Br. at 6). FOCNJ further argues that the use of the terms "property," "business personal property," "tangible property," and "other property" in various portions of the policy adds to the ambiguity of the "personal property" term. Finally, FOCNJ invokes the undisputed proposition that "exclusions which are not expressed plainly and without ambiguity are to be construed strictly against the insurer and liberally in favor of the insured." Donald M. Zupanec, Annotation, 8 A.L.R. 4th 563 § 2(a) (2006); see also Property Cas. Co. of MCA v. Conway, 147 N.J. 322, 326 (1997) ("One of the most basic precepts governing judicial construction of insurance policies is that courts construe ambiguities liberally in favor of the insured.").

St. Paul counters that the term "personal property" is unambiguous. It cites the Black's Law Dictionary definition of that term along with case law supporting the proposition that insurance policy "exclusions are presumptively valid and will be given effect if 'specific, plain, clear, prominent, and not contrary to public policy.'" Princeton Ins. Co. v. Chunmuang, 151 N.J. 80, 95 (1997) (quoting Doto v. Russo, 140 N.J. 544, 559 (1995)). In the edition cited by St. Paul, Black's definition of "personal property" states:

> In broad and general sense, everything that is the subject of ownership, not coming under denomination of real estate. A right or interest in things personal, or

> right or interest less than a freehold in realty, or any right or interest which one has in things movable.
> *Generally, all property other than real estate* . . . .

Black's Law Dictionary 1217 (6th ed. 1990) (emphasis added). Black's provides a secondary definition, however, which St. Paul fails to cite:

> Personal property also can refer to property which is not used in a *taxpayer's* trade or business or held for the production or collection of income. When used in this sense, personal property could include both realty (*e.g.*, a personal residence) and personalty (*e.g.*, personal effects such as clothing and furniture).

Id. (emphasis added).

The question before the Court is whether the term "personal property" in the insurance policy is "specific, plain, clear, prominent, and not contrary to public policy," keeping in mind that "insurance policy exclusions must be narrowly construed" and "the burden is on the insurer to bring the case within the exclusion." Chunmuang, 151 N.J. at 95. As the insurance policy is a contract between two sophisticated entities, the Court is guided by the rules of contract interpretation and the intention of the parties.

As an initial matter, the Court notes that the usual meaning of "personal property" is all property other than real estate. This is the case even though, as FOCNJ points out, "[t]he Court is required to construe the Policy through the eyes of an ordinary insured, not those of an attorney or law student."[2] (FOCNJ's Opp'n Br. at 9). The following definitions of "personal property" are illustrative: The American Heritage Dictionary of the English Language 1351 (3d ed. 1996) ("Temporary or movable property."); Webster's Third New International Dictionary of the English Language Unabridged 1687 (1993) ("estate or property other than real property consisting in general of things temporary or movable including intangible property : property

---

[2]The Court notes, however, that an "ordinary insured" entering into an insurance contract in excess of 500 pages and including an annual premium of nearly $400,000 is well advised to seek legal counsel.

-5-

recoverable by a personal action"); The American Heritage Dictionary: Second College Edition 926 (1985) ("Temporary or movable property as distinguished from real property."); The Compact Oxford English Dictionary 1316 (2d ed. 1999) ("things recoverable in the personalty or by a personal action, i.e. chattels and chattel interest on land, etc., as opposed to *real property* (*estate*, etc.) . . . includes generally all property except land . . . "); Merriam-Webster's Collegiate Dictionary 924 (11th ed. 2005) ("property other than real property consisting of things temporary or movable"); The Random House Dictionary of the English Language Unabridged 1446 (2d ed. 1987) ("an estate or property consisting of movable articles both corporeal, as furniture or jewelry, or incorporeal, as stocks or bonds (distinguished from *real property*)); Webster's II New College Dictionary 821 (1999) ("Temporary or movable property as distinguished from real property."). The Definitions and General Rules of the New Jersey Code provide the following definition:

> Personal property. "Personal property" includes goods and chattels, rights and credits, moneys and effects, evidences of debt, choses in action and all written instruments by which any right to, interest in, or lien or encumbrance upon, property or any debt or financial obligation is created, acknowledged, evidenced, transferred, discharged or defeated, in whole or in part, and *everything except real property as herein defined which may be the subject of ownership*.

N.J.S. 1:1-2 (emphasis added).

Given the overwhelming evidence from both legal and lay sources that "personal property" generally refers to all property other than real estate, the Court must determine whether any ambiguity remains as to the meaning of the term by examining: (1) Black's Law Dictionary's secondary definition, (2) the use of "personal property" in the broader context of the insurance policy, and (3) the intent of the parties.

Although FOCNJ argues against the use of Black's as a reference that an "ordinary insured" would consult, and does not cite the secondary definition, the Court must nevertheless

address the issue. In the most recent edition of Black's, the secondary definition reads: "2. *Tax.* Property not used in a taxpayer's trade or business or held for income production or collection." Black's Law Dictionary 1254 (8th ed. 2004) (emphasis in original). The contextual signal, "*Tax,*" is significant. The obvious meaning of the signal is that the secondary definition is not generally applicable, but rather is limited to the tax law context.[3] As the case at hand is in no way related to tax law, that definition is inapposite.

The next step in the Court's analysis is to examine the use of the term "personal property" in the broader contractual context. As FOCNJ points out, the policy includes a number of different property-related terms, used in a number of different sections of the policy. Whether these terms are conflicting or ambiguous bears on the Court's inquiry.

The first of the terms cited by FOCNJ is "tangible property." According to FOCNJ, "[t]he Control of Property Exclusion simply carves out a limited class of tangible property - i.e., 'personal property' in FOCNJ's care, custody or control. . . . [Hospitality's] claims relate to property damage to [Hospitality's] merchandise, not to any 'personal property.'" (FOCNJ's Br. at 9). FOCNJ is quite correct that "personal property" is a subset of "tangible property," which includes "[a]ll property which is touchable and has real existence (physical) whether it is real *or personal.*" Black's Law Dictionary (6th ed. 1990) (emphasis added); see also Black's Law Dictionary 1254 (8th ed. 2004) ("Property that has physical form and characteristics."); Webster's Third New International Dictionary of the English Language Unabridged 2337 (1993) ("property (as real estate) having physical substance apparent to the senses"). As these definitions make clear, "tangible property" includes both personal property and real property.

---

[3]Following past editions, the primary definition in the current edition reads: "1. Any movable or intangible thing that is subject to ownership and not classified as real property." No contextual signal is provided.

"Personal property" is a subset of tangible property, as FOCNJ asserts, but is also a term that normally includes "merchandise," counter to FOCNJ's assertion.

The next term cited by FOCNJ is "business personal property," as used in the Property Policy. That section of the policy says:

> [b]usiness personal property means things you own or have a financial interest in such as furniture, fixtures, machinery, equipment, supplies, and other *movable items*, and all other personal property owned by you and used in your business. Business personal property may include *personal property* used in your business that's leased from others when you are contractually required to insure it . . . ."

(Budris Aff. Exh. D at 2 of 21) (emphasis added). The Court can see no ambiguity in the use of this term. "Business" is clearly added to the personal property term to indicate ownership. The Court also notes that "personal property," as used in the definition, is clearly not limited to "items of personal use, such as a purse, umbrella or briefcase," as FOCNJ suggests. (FOCNJ's Br. at 10).

FOCNJ also cites the term "other property" as used in the Control of Property exclusion in the Umbrella Policy, arguing that it is more broad than the "personal property" term of the General Liability Policy. FOCNJ contends that this demonstrates the ambiguity of the policy, as St. Paul could have used "other property" rather than "personal property" had it intended a broad construction. As St. Paul credibly points out, however, the Umbrella Policy includes an endorsement that "replaces the Control of Property exclusion" in the Umbrella Policy and adopts the precise language of the General Liability Policy. (Budris Aff. Exh. D at 1 of 1, Doc. 47216). For this reason, the argument fails. Both the Umbrella Policy and the General Liability Policy use the term "personal property" in the Control of Property exclusion, and are entirely consistent.[4]

---

[4] FOCNJ's alternative argument, that the Umbrella Policy requires coverage if the General Liability Policy does not, also fails for this reason.

Finally, FOCNJ argues that "property," as used in the Property Policy, conflicts with the "personal property" term in that policy. "If 'personal property' were meant to cover all types of 'non-real' property as St. Paul argues, there would be no need for such distinctions between property and personal property." (FOCNJ's Opp'n Br. at 8). The Court finds this argument unavailing. After using the term "property," the policy goes on to list specific items not covered, including items of real property. As there is an obvious need to make distinctions between real property and personal property, there is a perfectly legitimate and unambiguous reason to distinguish "property" and "personal property."

The final element of the Court's analysis is to determine, insofar as it is possible, the intent of the parties. This is necessary because "New Jersey law prescribes construing an insurance contract to comport with the parties' intent and reasonable expectations." Oritani Sav. and Loan Ass'n v. Fidelity and Deposit Co. of Maryland, 989 F.2d 635, 638 (3d Cir. 1993). Although the Court finds the terms of the policy to be unambiguous, the contract is obviously complex. If evidence indicated that the parties understood the policy to differ from a plain reading of the contractual language, the Court would weigh that evidence in accordance with the principle that "[i]t is the paramount purpose of all construction of insurance policies to ascertain the intention of the parties in entering into that contract, and to effectuate that intention." 2 Eric Mills Holmes and Mark S. Rhodes, Holmes's Appleman on Insurance, 2d §5.4 (1996).

FOCNJ urges the Court to construe the Control of Property exclusion in the policy to apply only to the likes of individual umbrellas and purses in its possession. The inference to be drawn from St. Paul's position is that it was the intent of the parties to exclude all non-real property of others in FOCNJ's "care, custody, or control," unless specifically provided for by the policy. Merchandise would be excluded under this view. Since nothing has been presented

which would inform the Court as to the parties intentions at time the policy was purchased, the Court must draw any inferences without such information.

An examination of the parties' intent is informed by the common understanding of "care, custody, or control" exclusions in insurance contracts. Such an understanding is obviously shaped by case law and treatises interpreting such provisions. As one prominent treatise notes:

> A clause in a policy excluding from coverage injury to or destruction of property in the care, custody or control of the insured is enforceable. An exclusion of liability as to property within the insured's custody is reasonable and proper, and precludes recovery wherever the insured can be said to be legally responsible for such property.

6B John Alan Appleman and Jean Appleman, Insurance Law and Practice § 4328 (Buckley ed. 1979); see also Donald M. Zupanec, Annotation, 8 A.L.R. 4th 563 § 25(a) (2006) (citing cases for the proposition that "care, custody, or control" exclusions are enforceable for stored goods in warehouses and similar facilities).

Absent specific information bearing on the intent of the parties, intent must be viewed in light of the fact that "care, custody or control" provisions are generally enforceable and applicable to goods stored in warehouses. The Court has not seen any cases where such provisions have been limited to "personal belongings"[5] like umbrellas and purses. In light of the Court's finding that the "personal property" term of the policy unambiguously refers to all property other than real estate, the Court can see no support for the proposition that the parties intended the term to mean anything else.

In its own words, FOCNJ's position is that it "does not dispute that [Hospitality] alleges that its merchandise was in FOCNJ's care custody and control." However, "[b]ecause [Hospitality's] merchandise does not constitute 'personal property,' the Control of Property

---

[5] Although neither party cites this term in their briefs, the Court notes that it is used in the Property Policy to refer to personal property owned by employees of the insured. (Budris Aff. Exh. D at 6 of 21). In the Court's view, this further indicates that "personal property" in the contract must mean something more.

exclusion is inapplicable to [Hospitality's] claims." The Court disagrees. Despite the requirement that insurance contracts be liberally construed in favor of the insured, the Court cannot ignore the plain meaning of a contractual term. The Court finds no ambiguity or inconsistency in the contract nor any evidence that the parties intended "personal property" to mean anything other than its commonly accepted meaning. For those reasons, the Court finds as a matter of law that St. Paul is not required to indemnify FOCNJ.

## II. St. Paul's Duty to Defend

Even if St. Paul is not required to indemnify FOCNJ, the question remains whether any provision of the policy requires it to defend Hospitality's suit. According to the Liability Policy, "[w]e'll have the right and duty to defend any protected person against a claim or suit for injury or damage *covered by this agreement*. We'll have such right and duty even if all of the allegations of the claim or suit are groundless, false, or fraudulent." (Campbell Cert. Exh. E at 3 of 24) (emphasis added). The Umbrella Policy also includes a "covered by this agreement" provision. (Budris Aff. Exh. D at 7 of 24). As already discussed, the injury claimed by Hospitality is *not* covered by the agreement because Hospitality alleges and the facts support that the merchandise was in the "care, custody and control" of FOCNJ. As the duty to defend is a function of the contract, it follows that no such duty exists here. Hartford Acc. & Indem. Co. v. Aetna Life & Cas. Ins. Co., 98 N.J. 18, 22 (1984) ("The duty to defend is not a product of statute or of common law. It is solely a contractual undertaking of the insurer . . . . the duty to defend extends only to claims on which there would be a duty to indemnify in the event of judgment adverse to the insured").

### III. St. Paul's Duty of Good Faith

FOCNJ asserts that, even if St. Paul has no duty to indemnify or defend, there are material facts in issue which preclude summary judgment on the issue of bad faith. This claim rests on the notion that the implied covenant of good faith and fair dealing may be violated if an insurer fails to properly investigate a claim "regardless of whether the insurer was ultimately correct in determining coverage did not exist." Coventry Associates v. A.M. States Ins. Co., 961 P.2d 933, 937 (Wash. 1998). Beyond this Washington state case, FOCNJ cites only an unpublished opinion of this district, Mennen Co. v. Atlantic Mutual Ins. Co., 1999 WL 33654297 *7 (D.N.J. 1999), which effectively refutes FOCNJ's own argument. In that case, Judge Bassler held that there were facts in dispute regarding the underlying policy claims and that a bad faith claim may not be maintained against an insurer unless the underlying policy claims could be upheld on a motion for summary judgment. As Mennen shows, the New Jersey Supreme Court has addressed this question quite clearly, and has reached a different conclusion than that of the Washington Supreme Court in Coventry:

> [T]o recognize a cause of action for bad-faith failure to pay an insured's claim is consistent with New Jersey law. . . . If a claim is "fairly debatable," no liability in tort will arise. . . . To show a claim for bad faith, a plaintiff must show *the absence of a reasonable basis for denying benefits of the policy* and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. . . . Under the "fairly debatable" standard, *a claimant who could not have established as a matter of law a right to summary judgment on the substantive claim would not be entitled to assert a claim for an insurer's bad-faith refusal to pay the claim.*

Pickett v. Lloyd's, 131 N.J. 457, 470-73 (1993) (emphasis added) (internal citations omitted). The standard is clear. As the Court has granted summary judgment to St. Paul on the underlying policy claim, there is no cause of action for bad faith under New Jersey law.

## CONCLUSION

St. Paul has no duty to indemnify or defend FOCNJ in this case. It follows that FOCNJ's bad faith claim fails. Because St. Paul has no duty to indemnify or defend FOCNJ, the Court does not address the parties' arguments on the two-year suit limitation provision of the insurance policy.

For the foregoing reasons, it is on this 12th day of January, 2006,

ORDERED that First Occupational Center of New Jersey's Motion for Partial Summary Judgment is DENIED. It is FURTHER ORDERED that St. Paul Mercury Insurance Company's Motion for Summary Judgment is GRANTED. The Third-Party Complaint is DISMISSED, with prejudice.

William H. Walls, U.S.D.J.